UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> Plaintiff, <br> v. <br> SOPHIA DE ANDA, <br> Defendant. | Case No. 18-cr-00538-TSH-1 <br><br> **ORDER DENYING MOTION TO DISMISS** <br> Re: Dkt. No. 11 |

## I. BACKGROUND

On November 2, 2018, the government filed an information against Defendant Sophia De Anda charging her with one count of 18 U.S.C. § 13, assimilating California Penal Code section 653m(b) – Making Telephone Calls or Contact by Electronic Communication Device with Intent to Annoy, a Class B misdemeanor. ECF No. 1. Section 653m(b) provides:

> Every person who, with intent to annoy or harass, makes repeated telephone calls or makes repeated contact by means of an electronic communication device, or makes any combination of calls or contact, to another person is, whether or not conversation ensues from making the telephone call or contact by means of an electronic communication device, guilty of a misdemeanor. Nothing in this subdivision shall apply to telephone calls or electronic contacts made in good faith or during the ordinary course and scope of business.

The information alleges that, beginning on or about September 6, 2018, until on or about September 24, 2018, in the Northern District of California, "within the special maritime and territorial jurisdiction of the United States," De Anda made "repeated telephone calls and repeated contact" to employees of the Veterans Affairs Office in Palo Alto ("VA"), "by means of an electronic device, and made any combination of calls and contact, to another person, whether or not conversation ensued from making the telephone call and contact by means of an electronic

1  communication device, with intent to annoy and harass, in violation of . . . California Penal Code,
2  Section 653m(b)." ECF No. 1.

De Anda now moves to dismiss the information arguing: (1) the government does not have jurisdiction to charge her for conduct that did not occur on federal property; (2) the assimilated California statute is void for vagueness; and (3) the assimilated statute is overbroad in violation of the First Amendment. ECF No. 11.

## II. DISCUSSION

### A. Jurisdiction

De Anda first argues the government does not have jurisdiction to prosecute because the information does not allege where she made these calls or contacts, nor is there reason to believe that she made them on federal property. Mot. at 2.

18 U.S.C. § 13, also known as the Assimilative Crimes Act, gives the federal government jurisdiction to prosecute a state offense if committed "within or upon any of the places now existing or hereafter reserved or acquired as provided in section 7 of this title." Section 7 defines "special maritime and territorial jurisdiction of the United States" and applies to federal exclusive and concurrent jurisdiction. 18 U.S.C. § 7(3) ("Any lands reserved or acquired for the use of the United States, and under the exclusive or concurrent jurisdiction thereof, or any place purchased or otherwise acquired by the United States by consent of the legislature of the State . . .").

Here, the government has shown that the VA's Palo Alto campus was granted concurrent jurisdiction by the State of California in 2012. Oki Decl., Ex. B (Resolution of Cession of Concurrent Criminal Legislative Jurisdiction for the VA Palo Alto Campus, dated March 6, 2012), ECF No. 13-3. Therefore, the federal government may prosecute a state penal code violation if the crime occurred on VA Palo Alto property. Further, although De Anda asserts that she "must have been on federal property at the time she made the telephone calls or electronic communications in order to the federal government to prosecute her under 18 U.S.C. § 13," Mot. at 3, section 653m(c) of the penal code states:

> [A]ny offense committed by use of a telephone may be deemed to have been committed when and where the telephone call or calls were made **or received** and any offense committed by use of an electronic

> communication device or medium, including the Internet, may be deemed to have been **committed when and where the electronic communication or communications were originally sent or first viewed by the recipient**.

Cal. Pen. Code § 653m(c) (emphasis added). Thus, a defendant's location at the time she committed the offense is not the sole basis for jurisdiction; the location of the recipients also provides jurisdiction.

As the information alleges De Anda made repeated telephone calls and repeated contact with federal employees on federal property, the Court finds the government has jurisdiction to prosecute this matter.

**B. Vagueness**

De Anda next argues section 653m(b) is vague in violation of the Due Process Clause "because it does not provide fair notice, is standardless, and chills exercise of First Amendment freedoms." Mot. at 3. She argues section 653m(b) is facially vague because "'to annoy or harass' inescapably means different things to different people" and the statute does not attempt to define "annoy" or "harass." *Id.* at 4. Second, she argues the statute "contains an obvious invitation to discriminatory enforcement" because "Government officers may decide to enforce the statute depending on the identity of the caller, the recipient, and the content of the communication." *Id.* at 5. Third, she argues the statute's exception for communications "in good faith or during the ordinary course and scope of business" provides no ascertainable standard as the terms are undefined by the statute and seem "entirely dependent on subjective determinations by the caller, the recipient, and law enforcement." *Id.* at 6.

**1. Legal Standard**

"A criminal statute is void for vagueness if it is 'not sufficiently clear to provide guidance to citizens concerning how they can avoid violating it and to provide authorities with principles governing enforcement.'" *United States v. Zhi Yong Guo*, 634 F.3d 1119, 1121 (9th Cir. 2011) (quoting *United States v. Jae Gab Kim*, 449 F.3d 933, 942 (9th Cir. 2006)). "A defendant is deemed to have fair notice of an offense if a reasonable person of ordinary intelligence would understand that his or her conduct is prohibited by the law in question." *Pickup v. Brown*, 740 F.3d 1208, 1233 (9th Cir. 2014) (quoting *United States v. Weitzenhoff*, 35 F.3d 1275, 1289 (9th

Cir. 1994)). However, "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Id.* (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989)). "The touchstone of a facial vagueness challenge in the First Amendment context . . . is not whether some amount of legitimate speech will be chilled; it is whether a substantial amount of legitimate speech will be chilled." *Cal. Teachers Ass'n v. Bd. of Educ.*, 271 F.3d 1141, 1152 (9th Cir. 2000). "Therefore, even when a law implicates First Amendment rights, the constitution must tolerate a certain amount of vagueness." *Id.* at 1151.

### 2. Application to the Case at Bar

Here, California courts have already determined that section 653m(b) defines the offense with sufficient definiteness such that it does not violate due process. In *People v. Astalis*, a complaint charged the defendant with violating section 653m(b) by "mak[ing] repeated telephone calls, repeated contact by means of electronic communication devices, and a combination thereof." 226 Cal. App. 4th Supp. 1, 5 (Cal. App. Dep't Super. Ct. 2014). Defendant was found guilty and subsequently appealed, arguing section 653m(b) "is unconstitutionally overbroad under the First Amendment, and violates due process of law because it is vague." *Id.* The court of appeals affirmed the conviction, finding that:

> narrowly interpreted to preserve its constitutionality under the First Amendment, a person violates the statute only when he or she (1) makes "repeated" contacts, meaning "recurring" or "frequent" contacts; (2) with the specific intent to "annoy," meaning intentionally engaging in "conduct designed to disturb, irritate, offend, injure, or at least tend to injure, another person," or with the specific intent to "harass," meaning engaging in "a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, torments, or terrorizes the person, and that serves no legitimate purpose.

*Id.* at 11. The court also noted that "calls or contact in 'good faith or during the ordinary course and scope of business' are excluded from the statute." *Id.* As such, the court held that "[t]he statute provides a 'person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly.'" *Id.* (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972)). "The requirement that persons have the specific intent to annoy or harass, in particular, provides a clear standard of conduct for persons to obey." *Id.* (noting: "Courts are in

4

virtually unanimous agreement that the requirement of specific intent (that is, requiring the government to prove that the caller's subjective purpose in making the call was to annoy or harass) saves [harassment] statutes . . . from vagueness problems.") (citing *McKillop v. State*, 857 P.2d 358, 364 n. 6 (Alaska Ct. App. 1993) [collecting cases]); *see also United States v. Jones*, 83 F. App'x 867, 868 (9th Cir. 2003) (to violate section 653m, court must "find that the defendant had the specific intent to annoy"). The court further held that section 653m(b) satisfies due process "because its specific terms provide law enforcement with sufficient guidelines to check arbitrary and discriminatory enforcement of the law. The statute is clear regarding what a suspect must do to be guilty of the crime and does not vest excessive discretion in law enforcement." *Id.* (citing *People v. Richardson*, 33 Cal. App. 4th Supp. 11, 16 (Cal. App. Dep't Super. Ct. 1994).

Federal courts are bound by state court interpretations of their state laws. *R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 381 (1992) (where petitioner moved to dismiss count on ground that St. Paul ordinance "was substantially overbroad and impermissibly content based and therefore facially invalid under the First Amendment," Supreme Court determined it "is bound by the construction given to it by the Minnesota court" and therefore "accept[ed] the Minnesota Supreme Court's authoritative statement that the ordinance reaches only those expressions that constitute 'fighting works.'"). As such, the Court accepts the construction given by the court in *Astalis*.

De Anda argues that section 653m(b) is unconstitutionally vague under U.S. Supreme Court precedent *Coates v. Cincinnati*, 402 U.S. 611 (1971). Reply at 1. In *Coates*, the Supreme Court struck down an ordinance that penalized the act of three or more people standing together on a public sidewalk or street corner and "there conduct themselves in a manner annoying to persons passing by." 402 U.S. at 611 n. 1. The Court held that the language – "in a manner annoying" – of the ordinance is unconstitutionally vague because it authorizes the punishment of constitutionally protected freedom of assembly. *Id*. at 614. De Anda analogizes section 653m(b) to the *Coates* ordinance because, according to De Anda, "[t]he vagueness of 'annoy' is indistinguishable from the vagueness recognized in *Coates*." Reply at 4. The Court agrees that the prevention of "annoyance" alone is not a proper basis on which to curtail protected speech.

5

*See Coates*, 402 U.S. at 615-16 (a state may not make laws suppressing fundamental First Amendment rights "simply because its exercise may be 'annoying' to some people."). However, just because a law contains the word "annoy" does not mean it is unconstitutional. The term is a "word[] of common understanding, which a reasonable person of ordinary intelligence would be familiar with." *United States v. Zagorovskaya*, 2014 WL 12665158, at *10 (C.D. Cal. Oct. 8, 2014), *aff'd*, 628 F. App'x 503 (9th Cir. 2015) (citing *Cal. Teachers Ass'n*, 271 F.3d at 1151, 1152); *see also Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 n.7 (1982) (law is not vague if "it requires a person to conform his conduct to an imprecise but comprehensible normative standard" (quoting *Coates*, 402 U.S. at 614). In *Coates*, the Court found

> the ordinance vague, not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all. As a result, "men of common intelligence must necessarily guess at its meaning."

*Coates*, 402 U.S. at 614.

In contrast, the statute here includes the requirement that persons have the "specific intent" to annoy or harass. *Astalis*, 226 Cal. App. 4th Supp. at 11; *United States v. Jones*, 83 F. App'x at 868 (to violate section 653m, court must "find that the defendant had the specific intent to annoy"). The court in *Astalis* also found that a person violates the statute only when she "makes 'repeated' contacts, meaning 'recurring' or 'frequent' contacts." *Id.* Given these limiting instructions, the Court finds that section 653m(b) provides a "'person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly.'" *Astalis*, 226 Cal. App. 4th Supp. at 11 (quoting *Grayned*, 408 U.S. at 108). Further, section 653m(b) contains "specific terms" that provide law enforcement with sufficient guidelines to check arbitrary and discriminatory enforcement of the law. The statute is clear regarding what a suspect must do to be guilty of the crime and does not vest excessive discretion in law enforcement." *Astalis*, 226 Cal. App. 4th Supp. at 11; *Zagorovskaya*, 2014 WL 12665158, at *10-11 ("Because enforcement of this regulation is limited by the context in which [it] operates, government officers do not have unfettered discretion in enforcing this regulation.").

Accordingly, the Court finds that section 653m(b) is defined "with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). Thus, section 653m(b) is not impermissibly vague in violation of the Due Process Clause.

**C.     Overbreadth**

De Anda argues section 653m(b) is overbroad in violation of the First Amendment because it burdens substantial constitutionally protected activity. Mot. at 7. She argues the government "may not prohibit expression merely because it is intended to annoy or harass" because, while "the state might have a legitimate interest in preventing certain specific conduct encompassed by the broad statute, the legislature is required to define these crimes more narrowly as to not permit the chilling or prosecution of constitutionally protected conduct." *Id.* at 8. De Anda requests the Court direct the California legislature "to rewrite the statute to correct the constitutional infirmities." *Id.* at 9.

**1.     Legal Standard**

"It has long been recognized that the First Amendment needs breathing space and that statutes attempting to restrict or burden the exercise of First Amendment rights must be narrowly drawn and represent a considered legislative judgment that a particular mode of expression has to give way to other compelling needs of society." *Broadrick v. Oklahoma*, 413 U.S. 601, 611-12 (1973). In a facial challenge to a law's validity under the First Amendment, the "law may be invalidated as overbroad if 'a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" *United States v. Stevens*, 559 U.S. 460, 473 (2010) (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 n. 6 (2008)). The overbreadth doctrine exists "out of concern that the threat of enforcement of an overbroad law may deter or 'chill' constitutionally protected speech—especially when the overbroad statute imposes criminal sanctions." *Virginia v. Hicks*, 539 U.S. 113, 119 (2003). "Criminal statutes must be scrutinized with particular care; those that make unlawful a substantial amount of constitutionally protected conduct may be held facially invalid even if they also have legitimate application." *Houston v. Hill*, 482 U.S. 398, 410 (1987) (citations omitted).

7

Courts have "insisted that the overbreadth involved be 'substantial' before the statute involved will be invalidated on its face." *New York v. Ferber*, 458 U.S. 747, 769 (1982). Thus, "the mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *Members of City Council of City of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984). Instead, substantial overbreadth requires a showing of actual or serious potential encroachments on fundamental rights – "there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds. *Id.* at 801 (citations omitted). Facial overbreadth "is, manifestly, strong medicine" which has been used "sparingly and only as a last resort," and which "has not been invoked when a limiting construction has been or could be placed on the challenged statute." *Broadrick*, 413 U.S. at 613. Thus, a regulation will be deemed valid so long as it "promotes a substantial governmental interest that would be achieved less effectively absent the regulation." *Ward*, 491 U.S. at 782-83 (citations and quotations omitted). This is true "even if the government's interest could be adequately served by some less-speech-restrictive alternative." *Id.* at 800; *see also United States v. Albertini*, 472 U.S. 675, 689 (1985) ("The validity of [time, place, or manner] regulations does not turn on a judge's agreement with the responsible decisionmaker concerning the most appropriate method for promoting significant government interests" or the degree to which those interests should be promoted.).

### 2. Application to the Case at Bar

Here, once again, the court in *Astalis* has considered this very issue and determined that section 653m(b) is not overbroad in violation of the First Amendment. The court found that protecting individuals from harassing and unwanted contact is a "compelling government interest." *Astalis*, 226 Cal. App. 4th Supp. at 8. Regarding the requirement that the statute must be "narrowly drawn" in restricting or burdening the exercise of free speech under the First Amendment, *see Broadrick*, 413 U.S. at 611, the court found the statute "passes constitutional muster":

> We construe the statute's terms in order to preserve the statute's

> constitutionality. "It is the duty of this court in construing a statute to ascertain and give effect to the intent of the Legislature. [Citations.] And it is fundamental that the Legislature will not be presumed to intend unconstitutional results. [Citations.]" (*People v. Freeman* (1988) 46 Cal.3d 419, 425, 250 Cal. Rptr. 598, 758 P.2d 1128.) "[W]here ' "the terms of a statute are by fair and reasonable interpretation capable of a meaning consistent with the requirements of the Constitution, the statute will be given that meaning, rather than another in conflict with the Constitution." ' [Citation.]" (*People v. Davenport* (1985) 41 Cal.3d 247, 264, 221 Cal. Rptr. 794, 710 P.2d 861.)

*Astalis*, 226 Cal. App. 4th Supp. at 8-9. (alterations in original).

Further, the court determined that "[t]he requirement in the statute that a defendant intend to annoy or harass serves to narrow the law because, by referring to a person's 'intent to do some further act or achieve some additional consequence, the crime is deemed to be one of specific intent.'" *Id.* at 9 (quoting *Stark v. Superior Court*, 52 Cal. 4th 368, 391 (2011)). "Since specific intent to annoy or harass is required, a person who merely acts under a mistake of fact or by accident does not violate the statute." *Id.* (citing Cal. Pen. Code, § 26, subds. (3), (5)).

The court also defined the language used in the statute. It noted section 653m(b) requires the defendant make "repeated" calls or contacts, which it defined as meaning "recurring" or "frequent." *Id.* (citing Webster's 9th New Collegiate Dict. at 998 (1988); 2 Oxford English Dict. at 2494 (1971); *Scott v. State*, 322 S.W.3d 662, 669 n. 12 (Tex. Crim. App. 2010) [applying this definition in upholding telephone harassment statute]). It held that "[d]efining the word 'repeated' in this manner serves to narrow the scope of the statute; [p]rudence may justify a hands-off policy for single calls made with the intent to harass, but as harassing calls are repeated the state interest in intervening to protect the recipient becomes more compelling." *Id.* (citation and quotations omitted).

The court also looked to the statute's requirement that the person intend to "annoy" or "harass" and defined them using the definitions of these terms used in other statutes. As to "annoy," the court looked to the definition used under California Penal Code section 647.6, where it is defined as "'conduct designed to disturb, irritate, offend, injure, or at least tend to injure, another person.'" *Id.* (quoting Cal. Pen. Code § 647.6(a)(1). As to "harass," the court looked to the definition used under Penal Code section 646.9, where it is defined as "'a knowing and willful

9

course of conduct directed at a specific person that seriously alarms, annoys, torments, or terrorizes the person, and that serves no legitimate purpose.'" *Id.* (quoting Cal. Pen. Code, § 646.9, subd. (e)). The court determined that "[u]se of these definitions is fair and reasonable given the similarity between the unwanted intrusions involved in the laws. Regarding both annoying children and stalking, the government's interest is, in part, to protect the privacy of the victims, a like interest which is served by the present statute." *Id.* at 9-10 (citing cases).

Finally, the court recognized that "[a] telephone harassment statute can be found unconstitutional if it does not exempt a substantial number of legitimate calls," noting there "'are times when citizens make legitimate calls with the intent to annoy the recipient of the call, e.g., a consumer calling the seller or producer of a product to express dissatisfaction of product performance, a businessman calling another to protest failure to perform a contractual obligation, a constituent calling his legislator to protest the legislator's stand on an issue, etc.'" *Id.* at 10 (quoting *State v. Dronso*, 90 Wis. 2d 110, 117 (Ct. App. 1979)). However, it found section 653m(b) "does not suffer from such an infirmity because it specifically exempts 'telephone calls or electronic contacts made in good faith or during the ordinary course and scope of business.'" *Id.* (citing *State v. Elder*, 382 So. 2d 687, 691 (Fla. 1980) [upholding constitutionality of telephone harassment statute which included similar exemption for good faith business calls]).

*Astalis* is thorough and well-reasoned, and as noted above, federal courts are bound by state court interpretations of their state laws. *R.A.V.*, 505 U.S. at 381. As such, the Court accepts the construction given by the court in *Astalis* and finds that section 653m(b) is "narrowly drawn and represent[s] a considered legislative judgment that a particular mode of expression has to give way to other compelling needs of society." *Broadrick*, 413 U.S. at 611-12 (citation omitted). Further, the Court notes the Supreme Court has "repeatedly expressed its reluctance to strike down a statute on its face where there were a substantial number of situations to which it might be validly applied. Thus, even if there are marginal applications in which a statute would infringe on First Amendment values, facial invalidation is inappropriate if the 'remainder of the statute . . . covers a whole range of easily identifiable and constitutionally proscribable . . . conduct.'" *Parker v. Levy*, 417 U.S. 733, 760 (1974) (quoting *CSC v. Letter Carriers*, 413 U.S. 548, 580-81 (1973)).

Based on *Astalis*, the Court finds section 653m(b) is narrowly drawn to protect the government's substantial interest in protecting individuals against harassment, and the statute does not pose a realistic danger of significantly compromising recognized First Amendment protections. Thus, the the statute is not overbroad in violation of the First Amendment.

### III. CONCLUSION

For the reasons stated above, the Court **DENIES** De Anda's motion to dismiss.

**IT IS SO ORDERED.**

Dated: March 14, 2019

THOMAS S. HIXSON
United States Magistrate Judge