DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

DENISE M. OKI (CABN 311212)
Special Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7196
FAX: (415) 436-7234
Email: denise.oki@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SOPHIA DE ANDA,<br><br>Defendant. | CASE NO. CR 18-00538 TSH<br><br>**GOVERNMENT'S BRIEF OF STATUTORY ELEMENTS**<br><br>Court: Courtroom A, 15th Floor<br>Trial Date: July 8, 2018<br>Trial Time: 11:30 a.m. |

## INTRODUCTION

On August 29, 2018, the Department of Veteran's Affairs (VA) sent a letter to De Anda to notify her that her frequent and recurring communication to VA employees was harassment that created a work environment in which staff felt intimidated, harassed, and unfairly persecuted. Despite knowledge of the impact of her harassment, she continued to send obscene and accusatory communications, sometimes multiple times per day. The content of her contact was generally irrelevant to services provided by the VA, including but not limited to: accusations that VA employee Ann LeFevre operates a

brothel through her private practice, unsubstantiated allegations of gang rape by VA staff and management, and gruesome descriptions of her own bodily functions. The letter sent by the VA to De Anda provided the contact information for the appropriate venues to obtain services, however she instead chose to persist in sending harassing communication. When Philip Witters, VA Program Analyst, asked De Anda why she continues to harass the VA staff instead of accepting help, she said that she enjoys doing it.

De Anda has been charged with sending frequent communications to the VA employees at Menlo Park with the intent to harass or annoy for the specific communications sent after receipt of the letter from the VA. Again, this letter specifically notified her of the impact of the harassment and asked her to stop. The crux of this case is whether De Anda had the specific intent to harass or annoy, as required by Cal. Penal Code § 653m(b). De Anda's subjective state of mind during her continuous harassment should not negate her specific intent to harass or annoy for two reasons: she was notified of the impact of her harassment prior to the charged conduct as well as the appropriate ways to obtain services, and she expressed that she took pleasure in the harassment.

The elements of Cal. Penal Code § 653m(b) are:

(1) De Anda made repeated telephone calls or repeated contact by means of an electronic communication device, or made any combination of calls or contact;
(2) To another person;
(3) With intent to harass or annoy;
(4) Whether or not conversation ensued from making the telephone call or contact;
(5) The telephone calls or electronic contacts were neither made in good faith nor during the ordinary course and scope of business.

The last element establishes two affirmative defenses[1]: the communication was sent in good faith, or during the ordinary course and scope of business. This brief asserts the appropriate definitions of both affirmative defenses, as they pertain to the facts of this case.

[1] When a statute first defines an offense in unconditional terms and then specifies an exception to its applicability, the exception is generally an affirmative defense to be raised and proved by the defendant. *People v. Lam* (2004) 122 Cal.App.4th 1297, 1301; accord, *People v. Miller* (1999) 69 Cal.App.4th 190, 211. Section 653m(b) defines the elements of the offense and then specifies that the prohibition does not apply to contacts made in good faith. Therefore, good faith is a defense to be raised and proved by defendant. *People v. Bayan*, A111491, 2006 Cal. App. Unpub. LEXIS 9485 (Oct. 24, 2006).

## BACKGROUND

The government agrees with the definitions asserted in De Anda's Pretrial Conference Statement, except for those proffered for good faith and ordinary course and scope of business. Dkt. # 30. The definitions in agreement are as follows:

A. Repeated calls or contacts are defined as those which are recurring or frequent.

B. Harass means to engage in a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, torments, or terrorizes the person, and that serves no legitimate purpose.

C. Annoy means to engage in conduct designed to disturb, irritate, offend, injure, or at least tend to injure, another person.

## ARGUMENT

### I. The objective reasonableness of De Anda's claimed beliefs is strong evidence of whether or not she actually held such beliefs in good faith.

The parties agree that good faith means a subjective state of mind consisting of honesty in belief of purpose, or absence of intent to defraud or to seek unconscionable advantage. *United States v. Wallen*, 874 F.3d 620, 629 (9th Cir. 2017). In her Pretrial Conference Statement and in her Proposed Jury Instructions, De Anda proffered this definition of good faith from *United States v. Wallen*, but omitted that the Ninth Circuit Court of Appeals emphasized that the objective reasonableness or unreasonableness of a claimed belief bears directly on whether that belief was held in good faith. *See* Dkt. #30 at page 3, lines 8-9 and 17-18. *See also* Dkt 47 at page 3, lines 13-20. The court in *Wallen* presented a scenario in which a person shoots endangered animals in captivity at a zoo, and claims he believed the animals would otherwise have escaped and attacked him. *United States v. Wallen* at 629. The court asserted that the unreasonableness of the defendant's claimed belief should matter in a prosecution, because that unreasonableness casts significant doubt on the sincerity of the claimed belief. *Id.*

In the case at hand, the objective unreasonableness of De Anda's claimed belief indeed casts significant doubt on the sincerity of her claimed belief. Per De Anda's expert witness disclosure, the government anticipates that De Anda will claim that her PTSD caused her to subjectively believe that

relentless harassment of the VA was necessary in order to obtain services. However, the content of her communications were not indicative of any objective to obtain services – rather, they were unfounded allegations against named VA employees and grotesque descriptions of sexual acts and bodily functions. Furthermore, De Anda was notified in the letter from the VA of the appropriate ways to obtain services, which she ignored in lieu of persisting harassment. As the Ninth Circuit Court of Appeals asserted, the unreasonableness of a defendant's claimed belief that he killed a caged animal out of fear that the animal would otherwise escape and attack him, casts significant doubt on the sincerity of his claimed belief. Even an individual who suffers from fear of tigers cannot shoot a captive tiger without having his claimed belief scrutinized through the lens of objective reasonableness.

Similarly, in *Cheek v. United States*, when assessing the defendant's claimed belief that he was in compliance with the tax code, the Supreme Court explained that the more unreasonable the defendant's asserted beliefs, the more likely the jury will consider them to be a simple disagreement with known legal duties imposed by the tax laws. 498 U.S. at 203-04 (1991). The letter sent to De Anda by the VA on August 29, 2018, notified De Anda that her communications created an abusive work environment in which VA staff felt intimidated, harassed, and unfairly persecuted. Despite knowledge of the impact of her harassment, she persisted, establishing an objectively unreasonable basis to claim that her communications were sent in good faith. Instead, her incessant harassment was in blatant disagreement with the VA's request to cease contact for the wellbeing of its staff.

In *United States v. Powell*, the Ninth Circuit held that the jury was not precluded from considering the objective reasonableness of the interpretation of the law in weighing the credibility of the defendants' claimed beliefs. 955 F.2d at 1212. This means that the content of De Anda's communications, the frequency with which they were sent, and her refusal to stop sending them after being informed of their impacts by the VA — may be considered for the purpose of determining whether her claimed beliefs were held in good faith. Furthermore, the obscenity of the communications, such as accusations against named VA personnel of atrocities like gang rape in grotesque detail, should be considered objectively irrelevant to any good faith effort to achieve a legitimate purpose.

**II. Communication transpired in the ordinary course and scope of business includes contact where there is some nexus between the need to engage and the recipient's ultimate business, that is, the ability to provide the underlying service or good.**

In her Pretrial Conference Statement, De Anda defined contacts that transpire "during the ordinary course and scope of business" as those "between a business and a client where the communication involves the service provided by the business to that client or contacts made with a business or an employee of that business, at the workplace, regarding services provided by that business." See Dkt. #30 at page 3, lines 9-11 and 18-20. This definition is neither supported by De Anda's references nor by case law. De Anda referenced the 1999 version of California Penal Code Section 653(c), which lacks the language it purports to define. Interestingly, in her Proposed Jury Instructions, De Anda backs away from her initial proposed definition and proffers an even more broad, "common understanding" definition of "contacts made with a business involving services provided by that business." Dkt. 47 at page 3, lines 21-23. De Anda also referenced a California Senate Bill that changed the language of 653(c) to remove restrictions on prosecuting depending on whether a call was received at a place of work, but lacks the language purported to define ordinary course and scope of business. *See* S.B. 129, Assembly Appropriations, 2007-2008 Reg. Sess. (Cal. 2008).

The definition proffered by De Anda is inherently flawed, because it would effectively excuse any harassment regarding services provided by the business with which the victim is employed, regardless of legitimacy. The very purpose of § 653m is to deter people from making harassing communications with the intent to annoy and thus, to secure an individual's right to privacy against unwanted intrusion. *People v. Powers*, 193 Cal.App.4th 158, 164 (2011). Researching Ann LeFevre's personal practice, locating its physical address, and broadcasting unfounded allegations of prostitution among her colleagues are examples of indisputable violations of Ann LeFevre's privacy. The definition proffered by De Anda may be leveraged to excuse these violations on the sole basis that Ann LeFevre was employed by the VA. Such an interpretation would negate the very purpose of the statute, to protect an individual's right to privacy and deter deliberate harassment.

The statutory exemption for harassing or annoying communication transpired during the ordinary course and scope of business should be interpreted to protect communication where there is some nexus between the need to engage and the recipient's ultimate business, that is, the ability to provide the

underlying service or good. *Matera v. Google Inc.*, 2016 U.S. Dist. LEXIS 107918 at 19. In *Matera v. Google Inc.*, the "ordinary course of business" exemption to the federal Wiretap Act and California's Invasion of Privacy Act did not shield the defendant because there was no nexus between the need to intercept and the provider's ability to provide its service. *Id.* In the case at hand, the government acknowledges that in some circumstances, annoying communications are tolerated in the normal scope of business, such as calls to a product distributor or elected representative to voice displeasure. *In re Elias*, 205 Cal. App. 3d 166, 252 Cal. Rptr. 348, 1988 Cal. App. LEXIS 968. However, in order to respect the statute's legislative purpose, the exemption must pertain to communication where the need to engage is related to the recipient's ability to provide its service.

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that this Court adopt the following definitions as they pertain to Element 5 of § 653m:

(1) Good faith means a subjective state of mind consisting of honesty in belief of purpose, or absence of intent to defraud or to seek unconscionable advantage, subject to the objective reasonableness of claimed beliefs.

(2) Communication transpired in the ordinary course and scope of business includes contact where there is some nexus between the need to engage and the recipient's ultimate business, that is, the ability to provide the underlying service or good.

DATED: __July 3, 2019_____

DAVID L. ANDERSON
United States Attorney

/s
DENISE M. OKI
Special Assistant United States Attorney

Samantha Zurcher
*Certified Law Clerk